## GREEN AS GUARDIAN VS. FORD ADX.

The terms and subject matter of a submission to arbitration, when not in writing, and
    not shown by other evidence, can only be gathered from the award and what may
    be shown to have followed: And where the award is of the widow's claims for dower
    in the personal estate of her deceased husband, and under *sec.* 57, *chap.* 4, *Digest,*
    the court will not conclude that any other claims, not of the nature of dower, were
    included in the submission.

It is within the legal discretion of the Probate Court, which ought not to be controlled
    unless shown to have been used to manifest injustice, (*Bankhead vs. Hubbard et al.,*
    14 *Ark.* 298,) to allow the widow a certain sum, by way of commutation, for the
    provisions, &c., on hand at the death of her husband, where they have been used
    by the administrator instead of having been delivered to the widow under *sec.* 56,
    *chap.* 4, *Digest.*

An appeal cannot be taken from the judgment of the Probate Court, allowing a claim
    against an estate, after the expiration of the term. (*McMoran vs. Overholt,* 14 *Ark.*
    245.)

*Appeal from Phillips Circuit Court.*

Hon. CHARLES W. ADAMS, Circuit Judge.

PALMER, and WATKINS & GALLAGHER, for appellant.

Mr. Justice SCOTT delivered the opinion of the Court.

This case originated in the Probate Court of Phillips county.
The administratrix having filed a stated account for settlement,
the 7th November, 1853, and the usual notice having been given,
the guardian came in and filed exceptions to the whole account ;
but insists upon objections to but two items.   And it is as to these
two items that the whole controversy in this case has arisen.

One of them thus appears in the stated account, *to wit :* "And
the said Margaret Ford claims to have allowed to her the sum of
one hundred and fifty dollars for a commutation for the first year's
provisions, which she should have collected to her under the in-
tent of the statute in such cases, because she was the wife of the

deceased at the time of his death, for the support of herself and the children of deceased the first year after his death   $150 00."

The other appears in the same account, thus, *to wit:* "For amount paid Margaret Ford, voucher 16,           $229 95."

Voucher 16 is as follows, and is thus supported, *to wit:*

"Received of Margaret Ford, as administratrix of John B. Ford, deceased, the sum of two hundred and twenty nine (229) dollars and 95 cents, in full for an allowance in my favor against Ford's estate, by the Court of Probate of Phillips county, Arkansas, at April Term, 1853.

MARGARET FORD."

May 11th, 1853.

" <em>The Estate of John B. Ford,</em>

May 6th, 1853.          To MARGARET FORD,

For cash borrowed by said John B. Ford, deceased, in his lifetime, from said Margaret, on the 25th of December, 1850, as the same is entered on his cash book of that day,        $148 00

For cash borrowed by him on the 3d day of March, 1851, as the same is entered on his cash book of that date.                                     $89 50

$237 50.

CREDIT.

By cash paid on the above account March 3d, 1851, as entered on his cash book,                                     $7 55

Balance due at his death,                          $229 95."

"STATE OF ARKANSAS, }<br>COUNTY OF PHILLIPS. }

I, Margaret Ford, do solemnly swear that nothing has been paid or delivered towards the satisfaction of the above demand, except what is credited thereon, and that the sum of two hundred and twenty-nine dollars and ninety-five cents, above demanded, is justly due to me.

MARGARET FORD.

Sworn to and subscribed before me, an acting justice of the peace within the State aforesaid on the 11th day of May, A. D., 1853.

BENJ. F. BALL, J. P."

.     STATE OF ARKANSAS, ⎫
COUNTY OF PHILLIPS.  ⎬

Probate Court for said county, April term, 1853.

This day appeared in open court, Benedict J. Knott, who being legally sworn, on his oath says, that the book produced by him is the cash book of John B. Ford, deceased, and has at all times been so regarded since his death.

B. J. KNOTT.

Sworn to and subscribed in open court, May 11th, 1853.

EDW. H. COWLEY, Clerk."

"The foregoing claim being proven in open court, is allowed and classed in the fifth class—April term, 1853.

A. G. UNDERWOOD, Judge."

"Now, on this day comes Margaret Ford, by her attorney, and files a claim against the estate of John B. Ford, deceased, founded on an open account for a balance of two hundred and twenty-nine dollars and ninety-five cents, accompanied by her affidavit as required by law, and also the affidavit of B. J. Knott; and thereupon said claim is presented to the court for allowance, and the court being satisfied from the affidavit of said Knott, that the book produced by him was the cash book of the deceased; and also being satisfied from testimony of Arthur Thompson, that said John B. Ford was a regular merchant, and had the reputation of keeping correct books in his lifetime; and further that the entries therein are the genuine handwriting of the said Ford made by himself; and being fully satisfied from all the evidence adduced that said claim is just and unsatisfied, do allow the same for the said sum of two hundred and twenty-nine dollars and ninety-five cents, and class it in the fifth class against said estate."

It is insisted that the administratrix is precluded from setting up either of these two items by an arbitration and award, between herself as the widow, and the appellant then administrator of the estate of .Ford, which by agreement was entered in the Probate Court, at the April term, 1852, as the judgment and decree of that court.

It appears from the transcripts of the records in that court, that the appellee filed a very comprehensive petition for dower, embracing, specifically, lands, personal property, money, rents, certain choses in action and sales of merchandize made after the death of her husband, both for cash and on credit, together with application for $150, under the provisions of the 57th section of the administration law, and a commutation for such grain, meats, vegetables, groceries and other provisions as the inventory showed was on hand at the time of her husband's death, necessary for the subsistence of herself and family for twelve months after the death of her husband, under the provisions of the 56th section. And also prayed to be allowed out of the estate the amount of the claim for $229 95, alleged to be for ready money loaned to her husband during the coverture.

The court with a liberal hand decreed to her all she asked, but the then administrator took a bill of exceptions and appealed to the Circuit Court. It does not however appear that this appeal was ever prosecuted; on the contrary, it is to be inferred that the arbitration at once intervened and put a stop to it. Nor does it appear with certainty what was submitted to arbitration. That is to say, whether only the matters in dispute in 'reference to dower, or the whole of the matters embraced in the petition and decree. All that appears in the record, throwing any light upon this point, is the following, to wit:

" *Margaret Ford vs. The estate of John B. Ford, deceased.* APPLICATION IN THE PROBATE COURT FOR THE ALLOTMENT OF DOWER IN THE ESTATE OF DECEDENT—The result of my investigation into the case above stated, is, that the decree of the Probate Court as entered of record is wrong, and should have been as follows, as

far as it pertains to the allotment of dower in the personalty. I therefore reform the decree as follows, and hope that the parties will be satisfied with the allotment which I make below, believing it equitable and legally correct, *to wit :*

1st. The widow is entitled to dower to the extent of ⅓ of the cash on hand at decedent's death, say $521, $173 33½

2d. ⅓ of the value of the watch, say $30, 10 00

3d. ⅓ of the cash sales since the death of Ford, say $201 66, 67 22

4th. ⅓ of proceeds of credit sales of goods in same time, $1387 38, 461 12

5th. ⅓ of the goods now on hand, say $1601 07 533 69

6th. ⅓ of rents of store house, say $95, 31 66⅔

7th. The sum allowed by statute over and above dower, 150 00

$1427 03

From this sum should be deducted the amount of the account in favor of estate against the widow since the death $203 62

The amount for which the decree should be, is $1223 41.

Which amount should be recorded in favor of the widow, to be paid before any other allowance.

The lands I have not taken into the above estimate. The court should have directed the commissioners appointed, to have ascertained whether the lands and house could have been divided in kind, and if it should turn out that such could not be done, then, in that case, the court should have directed that the lands and the house be rented out, and the one third part of the amount arising therefrom, after paying the taxes and the amount expended necessary to keep the same in good repair, to be given to the widow as her dower interest therein.

THOMAS B. HANLY.

*May 20th, 1852.*"

"In the matter of the assignment of dower to Margaret Ford, widow of the late John B. Ford, deceased, it is agreed by and between Barton W. Green, as the administrator of the estate of John B. Ford, deceased, and Margaret Ford, widow of the said John B. Ford, that they will abide by the foregoing allotment and apportionment of dower, (made by T. B. Hanly, who was called upon by the parties as arbitrator, and the mutual friend of the parties, and at the instance and request of the said parties.) And we agree that the same be and remain as a full and final allowance made to the said Margaret out of the personal estate of the said John B. Ford, deceased, as her dower interest and other right therein, as above stated and shown ; and the said Margaret agrees that this shall be received and accepted by her in full of her right of dower in the personal property belonging to said estate, and agrees hereby that a decree may be entered accordingly, in the Probate Court of Phillips county, in lieu and in the place of the one heretofore entered by said court in her behalf.

In witness whereof, we, the said parties hereunto set our hands and seals this 22d day of May, A. D., 1852.

B. W. GREEN, [SEAL.]
MARGARET FORD, [SEAL.]

In the above agreement the fourth item is not to be paid until the amount of the credit sales is realized and collected, and if any loss is sustained therein, the loss shall be computed at the same rates as the parties are interested.

MARGARET FORD, [SEAL.]
B. W. GREEN, [SEAL.]

Received on the above, seven hundred and sixty-two dollars and twenty-nine cents, in part payment of the above allotment of dower in the personal estate of John B. Ford, deceased, this 22d day of May, 1852.

MARGARET FORD.

ATTEST :
    GEORGE W. BURRISS."

It is stated in the bill of exceptions that this award was entered as the judgment and decree of the Probate Court.

As the submission, which is always the law of each particular case submitted to arbitration, does not, in this case, appear to have been in writing, it is to be supposed, that it was by parol: and this is indicated in the case also from what follows the award, over the signature of the parties. When this is the case, the terms and subject matter of the submission, when not shown by other evidence, as in this case, can only be gathered from the award, and what may be shown to have followed. The award is simply as to *dower*, and " the sum allowed by statute, over and above dower, $150," seeming to point to the 57th section of the administration law, where that specific sum is allowed the widow in property, at the appraised value, when the estate is not insolvent, as was alleged and seemed to be admitted in the proceedings of the Probate Court in this case. *Digest, chapter 4, page 121, section 57.* The agreement, which follows the award in all its terms of expression, seems to follow it with the utmost closeness, alluding to nothing but dower, except in the single expression, " and other interest therein as *above stated,*" whereby the other interest in the personal property thereby spoken of, is expressly limited to the claim of $150, under the 57th section of the administration law, as stated in the award.

There is nothing to indicate with any certainty that the submission was more comprehensive than this.

Although the administrator was dissatisfied with the decree of the court, it may have been that that the special matters of dissatisfaction were as *to dower*, and this particular allowance over and above dower, and hence that he submitted nothing else to arbitration.

It is very true that the decision of an arbitrator, though apparently on a single point, may, in effect, be on more than one, as the judgment on that may be a negation as to others. As in this case, the award of dower in the various items of money, rents, sales of merchandize, &c., &c., specifically, is a negation as to

allowance of dower in any thing else—as dower in the county scrip for instance—but an award of dower is no negation of a claim over and above, and not of the nature of *dower ;* nor is an award of *one* claim, not included in dower, any negation of any *other* distinct claim, as for instance, a claim of a debt against the estate, or under a different provision of the statute.

It is difficult to say, then, from any thing upon the face of this record, that it has been shown, that any thing else than the matter of dower and the matter of the claim under the 57th section of the administration law, was ever submitted or arbitrated. And it was incumbent upon the guardian setting up the contrary, to show it in proof. And it cannot be maintained that matters not submitted to arbitration, can be affected by an award as to such matters, only, as were submitted.

There is another view in which this point may be regarded. The chief object of the common law, in setting on foot and sustaining arbitrations and awards, was to settle controversies and terminate litigation; hence, that law does not countenance, in general, awards that are only of *parcel* of the things submitted to arbitration, and will always disregard such awards if apparently injurious to the party taking exceptions to them. 7 *East* 81 ; *Kyd on Awards* 175 ; 7 *Cranch Rep.* 171.

Within the reason of this rule, it might, therefore, be a matter of difficulty to uphold the award in this case, if it should be true, as is contended, that not only the matters to which it relates, but also the two other distinct matters embraced by the exceptions to the settlement in this case, were also submitted to the arbitration.

In either view, therefore, we see what seems to be sufficient reason to hold that the defence upon this point has not been made out.

It follows that the Probate Court might, therefore, have considered the application for commutation, under the 56th section of the statute, without prejudice from the arbitration, and in its legal discretion in the premises, which ought not to be controlled,

45c

unless shown to have been abused to manifest injustice, (*Bank-head vs. Hubbard et al.*, 14 *Ark. Rep.* 298,) allowed the claim to the extent it did—finding, it is to be presumed, in the absence of any thing in the record to the contrary, from an inspection of the inventory, and from other evidence, that grain, meats, vege-tables, groceries and other provisions were actually on hand at the death of the intestate, and had been taken by the adminis-trator, instead of being given up to the widow for the subsistence of the family for twelve months thereafter.

The other item does not seem, upon the face of this record, to stand upon any such meritorious ground; although it was enti-tled to be considered by the Probate Court, to a like extent, un-prejudiced by the award. Because, to say the least of it, as it is presented in this record, it must be considered a very remarka-able claim, alleged, as it is, to have originated in an alleged contract, made during coverture, between a wife and a husband in respect of money apparently not shown to be other than the husband's own in point of law. But we design to decide nothing as to this, as we properly cannot ; because, no question as to that point can come up in this collateral way in the case before us. The Pro-bate Court having allowed this claim at the April term, 1853, and no appeal having been taken from that judgment of allow-ance, all inquiry is now shut out, (*McMoran vs. Overholt*, 14 *Ark. Rep.* 245,) from all, except the chancellor, upon proper allega-tions to him as to this judgment of allowance ; and, consequently, this judgment, as long as it stands, sustains unavoidably, the item in the account excepted to, that remained to be passed upon by us.

It is our opinion, therefore, upon the whole case, that the judg-ment of the Circuit Court affirming that of the Probate Court, must unavoidably be affirmed by this court.